**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

BONG HWA USA, INC.,                                  ____ CV _____ (___) (___)

             **Plaintiff,**

     **-against-**                                        **CIVIL COMPLAINT**
                                                     **WITH JURY DEMAND**
**USF COLLEECTIONS INC. a/k/a**
**USF COLLECTIONS INC.,**

             **Defendant.**
-----------------------------------------------------------------

      Plaintiff BONG HWA USA, INC. ("Plaintiff") hereby files this Complaint for *inter alia* trademark counterfeiting and related claims against defendant USF COLLEECTIONS INC. a/k/a USF COLLECTIONS INC., ("Defendant"), on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

## NATURE OF THE CASE

      1.    This is an action to combat Defendant's importation and sale of defective and counterfeit products that infringe a federally-registered trademark owned and used by Plaintiff in connection with the sale of Plaintiff's popular Switch™ brand apparel. As a direct and proximate result of Defendants' unlawful importation, distribution and sale of defective Switch™ apparel, Plaintiff has been irreparably harmed. Plaintiff seeks permanent injunctive relief, damages, costs and attorney's fees as authorized by the Lanham Act, the Tariff Act, and New York State and common law.

      2.    Plaintiff further seeks immediate *ex parte* relief for a temporary restraining order, seizure order, asset restraining order, expedited discovery; preliminary and permanent

injunctions; statutory damages; treble damages or profits; pre-judgment interest; and attorneys' fees and costs, pursuant to 15 U.S.C. §1117, *et seq*. Plaintiff hereby incorporates by reference the contents of the affidavit of Stephen Gallagher, Plaintiff's national sales representative, sworn to April 19, 2021 and submitted herein in support of Plaintiff's initial motion for a temporary restraining order and preliminary injunction, as though fully stated herein.

## THE PARTIES

3.      Plaintiff BONG HWA USA, INC. is a New York Corporation with offices located in the County and State of New York and is the owner of the Switch™ brand trademark, among others.

4.      Upon information and belief, defendant USF COLLEECTIONS INC. is a New York corporation with offices located at 1385 Broadway, Suite 1012a, New York, New York, 10018-6097, New York, New York that holds itself out to the public as "USF Collections, Inc.," and, at all relevant times herein, has been engaged in the distribution, offer for and/or sale of counterfeit goods in this judicial district and elsewhere throughout the United States.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. §1367, over Plaintiff's claims for unlawful and deceptive acts and practices under the laws of the State of New York.

6.      Personal jurisdiction is proper over Defendant pursuant to New York C.P.L.R. §302(a) because the unlawful conduct complained of herein has caused, and continues to cause,

injury to Plaintiff within this District; and Defendant has offered to sell and has sold counterfeit goods to consumers within this District.

7. Venue is proper in this District pursuant to 28 U.S.C. §§1391 because a substantial part of the events giving rise to these claims arose in this District.

## FACTS APPLICABLE TO ALL CLAIMS

### A. Factual Background

8. Plaintiff is the owner of the Switch™™ brand trademark (the Switch™ Mark), Federal Registration Number 85686351 (Exhibit F), among others. Plaintiff designs and wholesales merchandise to well-known retailers such as Burlington Coat Factory, Forman Mills, V.I.M. and City Trends for sale in United States markets. Plaintiff has absolute control with respect to quality and design of its merchandise to ensure that the branded products conform to the Switch™ brand's core values and high-quality standards.

9. Unfortunately, the success of the Switch™ label has also made Plaintiff a target for unscrupulous competitors.

10. Plaintiff recently learned that Defendant has purchased defective Switch™ merchandise from a manufacturer in China – merchandise that was rejected as non-confirming by Plaintiff -- and is actively selling those defective and rejected items, with the Switch™ labels still attached, to resellers such as Forman Mills without Plaintiff's prior release, authorization or consent.

11. Plaintiff has obtained invoices sent by Defendant to Forman Mills (Exhibit A) that plainly demonstrate that Defendant is illegally selling Plaintiff's merchandise to Forman Mills and likely other resellers.

12.     Defendant is, and has been, selling the defective Switch™ apparel with the Switch™ label still affixed (Exhibit B).

13.     Defendant has usurped the benefits of Plaintiff's styles and designs -- absent any authorization or quality control by, or payment to, Plaintiff. Defendant's brazen unauthorized use of Plaintiff's intellectual property is intended to take unfair advantage of the Switch™ brand's prestige and goodwill.

14.     Although they have no right to do so, Defendant will thereby obtain the benefits of the reputation and consumer goodwill that Plaintiff has painstakingly built over the past seven (7) years, and Defendant will enjoy -- for free -- the benefit of being an official licensee, when in fact they are not.

15.     Defendant's conduct, which is already causing actual confusion in the marketplace and inflicting irreparable harm on Plaintiff, is a clear violation of Plaintiff's intellectual property and contractual rights, and warrants immediate injunctive relief.

### B.     Plaintiff's Business

16.     Plaintiff, a New York corporation, is the owner of the Switch™ brand trademark, among others. Plaintiff designs and wholesales merchandise to well-known retailers such as Burlington Coat Factory, V.I.M., Citi Trends and Forman Mills for sale in United States and international markets.

17.     Plaintiff has absolute control with respect to quality and design of its merchandise to ensure that the branded products conform to the Switch™ brand's core values and high-quality standards. Plaintiff also uses distinctive design elements in connection with its branded products, as reflected in the attached representative depictions of Switch™ brand products (Exhibit B).

18.     Plaintiff has spent tens of thousands of dollars in advertising and promoting the Switch™ brand, and Plaintiff's goods and services have enjoyed tremendous retail success. The Switch™ brand has realized nearly $100 million in retail sales in the past seven (7) years and held strong market share with several key retailers, including V.I.M., Burlington Coat Factory, Forman Mills, Ross Stores, Rue 21, It's Fashion and Citi Trends, to name a few.

## C.     Defendant's Illegal Conduct

19.     On or about April 3, 2019, Plaintiff contracted with Weihan Qingquan Garment Co., Ltd,, a factory located at #108 Hengtai Street, Hi-Tec Zone, Weihai, Peoples Republic of China (the Factory), to manufacture Switch™ merchandise according to strictly detailed guidelines and specifications. Plaintiff provided detailed Purchase Orders to the Factory containing pictures of the items (Exhibit C).

20.     Specifically, Plaintiff ordered the following items from the Factory:

(a)     5,160 units of the Switch™ graphic velvet jacket, Style No. SF9812;

(b)     240 units of the Switch™ graphic velvet jacket, Style No. SF9812;

(c)     5,160 units of the Switch ™ graphic velvet pants, Style No. SF9412; and

(c)     240 units of the Switch™ graphic velvet pants, Style No. SF9412.

21.     The items were expected to be manufactured and shipped within 30-45 days after the order was placed. The Purchase Orders clearly indicate that the merchandise was to be in stores for "19FW," which indicates fall and winter of 2019.

22.     However, by late July 2019, nearly four months later, Plaintiff had not seen even a sample of the merchandise that had been ordered, and Fall was quickly approaching. The Factory kept asking for extensions, which Plaintiff granted reluctantly, as time was of the essence.

23.     In early August 2019, the Factory provided a sample of the merchandise, but asked for yet another extension to manufacture the goods. Upon inspection of the sample, Plaintiff determined that the Switch™ sample was sub-standard, not merchantable and useless.

24.     After conferral among Plaintiff's management staff, Plaintiff canceled the entire order as untimely and non-conforming and sent an email to the Factory to this effect (Exhibit D).

25.     The Factory then accepted Plaintiff's cancellation and promised to remove all labels, tags and other identifying characteristics from any of the apparel they had manufactured pursuant to the Purchase Orders.

26.     Plaintiff then heard nothing more about the issue and assumed the merchandise had either been destroyed or resold without the Switch™ label or other identifying characteristics.

27.     Then, in mid-March 2021, Plaintiff was advised by Forman Mills that another vendor, which turned out to be the Defendant, had sold them Switch™ merchandise. Forman Mills was good enough to send Plaintiff the invoice they had received from Defendant (Exhibit A), which lists and identifies the defective Switch™ merchandise ordered from the Factory that should have been destroyed or de-labeled before resale.

23.     Stephen Gallagher was also able to take pictures of the defective Switch™ merchandise displayed at Forman Mill (Exhibit B), which conclusively proves that Defendant illegally imported the defective Switch™ merchandise and sold it to Forman Mills without Plaintiff's release, license, authorization or consent.

24.     Plaintiff cannot underestimate the importance and necessity of keeping the non-conforming goods out of the market. The Switch™ brand has been cultivated for years, and represents the finest in young man's sportswear and related apparel. Plaintiff cannot allow sub-standard goods into the market, lest Plaintiff tarnish Plaintiff's good name. This is why it was

crucial to dissociate the Switch™ brand from the substandard, non-conforming items produced by the Factory.

25. Plaintiff is actively investigating other sales of the defective merchandise by Defendant, as Plaintiff believe there are several hundreds of unsold Switch™-brand items that Defendant is actively marketing in the United States.

26. Defendant's conduct is a classic case of misappropriation, trade dress and trademark infringement, as well as unfair competition under federal and New York state law. Plaintiff's trade dress is inherently distinctive and has acquired secondary meaning. Defendant's unauthorized use -- offering defective secondary market Switch™-brand merchandise for sale in the same market -- is causing ongoing harm and dilution of the Switch™ trademark. Although Defendant has no license or right to use any of Plaintiff's intellectual property, Defendant currently is attempting to pass off as genuine the defective products still bearing the Switch™ brand.

27. As a result of Defendant's unlawful conduct, Plaintiff is suffering, and if Defendant is not stopped will continue to suffer, irreparable harm to its business, brand, goodwill, and reputation -- a harm presumed where, as here, Plaintiff is likely to succeed on its misappropriation and trade dress claims. Even if not presumed, the irreparable harm here is obvious and severe. Switch™ is a brand founded and built on a reputation for and a commitment to excellence and high-quality products - a reputation being irreparably soiled by the products Defendant is intentionally selling as, and mistakenly believed by customers to be, Plaintiff's genuine products.

28. This application is being brought on an emergency basis as Defendant is believed to still be selling defective, unauthorized Switch™-brand products into the market.

29. Our attorney has recently sent a formal Cease and Desist letter to Defendant (Exhibit E), but has received no response. Plaintiff are very concerned that, absent a Court Order,

Defendant will continue its illegal conduct and further sully the reputation and good name of the Switch™ brand. Accordingly, Plaintiff respectfully submits that this motion for a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should be granted.

## D. Actual Confusion and Irreparable Harm

32. Defendant's misconduct has caused actual confusion in the marketplace and threaten irreparable injury to Plaintiff's brand. Defendant has flooded the market with defective merchandise bearing the Switch™ label (the "Infringing Goods"). This leads consumers to believe that the subject goods are authentic licensed Switch™ brand goods, which is not the case.

33. As a result of this confusion, Defendant is, through blatant misappropriation and trademark infringement, tarnishing the brand Plaintiff has worked so hard to establish and build upon as its own. Furthermore, Defendant's unauthorized resales of Infringing Goods demonstrate the severe and irreparable harm that Plaintiff's Switch™ brand is suffering and – absent immediate intervention – will continue to suffer, as a result of Defendant's infringing activity.

34. Defendant has unlawfully imported goods that infringed Plaintiff under Section 526(a) of the Tariff Act. This Section provides that, unless given Plaintiff's consent, "it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States." 19 U.S.C. § 1526(a).

35. Defendant is liable for unlawfully importing defective apparel bearing the Switch™ trademark in violation of Section 526(a) of the Tariff Act.

36.     As a result of Defendants' unlawful conduct, Plaintiff is suffering, and if Defendants are not stopped will continue to suffer, irreparable harm to its business, brand, goodwill, and reputation -- a harm presumed where, as here, Plaintiff is likely to succeed on its trade dress and "palming off" infringement claims. Even if not presumed, the irreparable harm here is obvious and severe. Switch™ is a brand founded and built on a reputation for and a commitment to excellence and high-quality products - a reputation being irreparably soiled by the products Defendants are intentionally selling as, and mistakenly believed by customers to be, Plaintiff products.

37.     Plaintiff has spent tens of thousands of dollars in advertising and promoting the Switch™ brand, and Plaintiff's goods and services have enjoyed tremendous retail success. All of Plaintiff's efforts and expenditures in this regard will be for naught if Defendant's illegal conduct is not immediately enjoined.

## COUNT ONE

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

## (15 U.S.C. §1125(a))

38.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

39.     The Infringing Goods sold and offered for sale by Defendants are of the same nature and type as Switch™ Products sold and offered for sale by Plaintiff and, as such, Defendant's use is likely to cause confusion in the general public.

40.     By palming off and using Plaintiff's Switch™ Products and Mark, Defendant misrepresents and falsely describes to the general public the origin and source of the Infringing Goods and creates a likelihood of confusion by consumers and others as to the source of such merchandise.

41.     Defendant's unlawful, unauthorized and unlicensed offer for sale and/or sale of the Infringing Goods creates express and implied misrepresentations that the Infringing Goods were created, authorized or approved by Plaintiff, all to Defendant's profit and to Plaintiff's great damage and injury.

42.     Defendant's aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendant's use of Plaintiff's marks, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

43.     Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO

## FEDERAL TRADEMARK INFRINGEMENT

## (15 U.S.C § 1114)

44.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

45.     Plaintiff's Switch™ Mark and the goodwill of the business associated with the Switch™ Mark in the United States are of great and calculable value, are highly distinctive, and have become associated in the public mind with Plaintiff's products and related services of the very highest quality and reputation finding their source from Plaintiff.

46.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the Switch™ Mark and the fact that Defendants' Infringing Goods bear marks and trade dress which are intentionally and confusingly similar to Plaintiff's Switch™ Mark, Defendant has manufactured, distributed, offered for sale and/or sold the Infringing Goods

to the consuming public in direct competition with Plaintiff's sale of genuine Switch™ Products, in or affecting interstate commerce.

47.     Defendant's use of Plaintiff's Switch™ Mark in conjunction with the Infringing Goods is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Goods, and is likely to deceive the public into believing the Infringing Goods being sold by Defendants originate from, are associated with or otherwise authorized by Plaintiff, all to damage and detriment of Plaintiff's reputation, goodwill and sales.

48.     Plaintiff has demonstrated that (1) the Switch™ Mark and trade dress is valid and entitled to protection, and (2) Defendant's use of the trademark or trade dress is likely to cause consumer confusion as to the origin, affiliation or association, or endorsement of Defendant's Infringing goods or services.

49.     The particular styles of the Switch™ Brand merchandise - the salient features of which include the graffiti-style designs and other clearly non-functional elements - are arbitrary, fanciful, and thus inherently distinctive.

50.     The Switch™ Product line has also have acquired secondary meaning. The sales success of the Switch™ Product line is manifest: Switch™ brand products have grown steadily in the past seven (7) years. Further, Defendant's attempts to intentionally pawn off the Infringing Goods as genuine Switch™ brand designs and trade dress raises a presumption that the imitated trade dress has secondary meaning.

51.     Likelihood of confusion is presumed as a matter of law because Defendants' misappropriation of the Switch™ brand is wholesale and intentional.

52.     Plaintiff's trade dress and trademark are indisputably strong and distinctive. They also have acquired strong secondary meaning in the marketplace, as a result of the tremendous retail success that Plaintiff's products have enjoyed, and as further evidenced by Defendants' deliberate copying of the trade dress and mark.

53.     Defendant's Infringing line is using virtually the identical trade dress as the Switch™ Products, and is continuing to sell the same, but counterfeit, urban wear bearing the same Plaintiff trade dress.

54.     Defendant's Infringing Products compete in the same market in which Plaintiff's Switch™ Products are sold, and target the same consumers. The closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source. Where, as here, a competitor uses the same trade dress in the same market, likelihood of confusion is inevitable.

55.     Defendants' bad faith is manifest. Defendants' misappropriation here could not have been more deliberate. Defendants simply helped themselves to Plaintiff's intellectual property in order to sell the same products to the same consumers. It is evident that Defendants intended the public to identify their products with Plaintiff; indeed, they are selling defective and rejected Plaintiff garments.

56.     There is evidence of actual confusion. Although Plaintiff need not show actual confusion - particularly where, as here, the infringing products have been on the market only a short time - there is already substantial evidence of actual confusion evidenced by retail buyers purchasing the Infringing Goods as though they were genuine Switch™ brand merchandise. Such evidence of actual confusion strongly supports a finding of likelihood of confusion.

57.     Plaintiff should not be held hostage to Defendants' lack of quality control. Here, there already is evidence that the quality of the Infringing Goods falls far short of Plaintiff's high standards. It is the control of quality that a trademark holder is entitled to maintain, and which has been misappropriated by Defendant.

58.     Thus, because Plaintiff has no control over the quality of Defendants' Infringing Goods, this factor further supports a finding of likelihood of confusion.

59.     Consumers are likely to exercise a low degree of care. The products at issue in this case are relatively inexpensive. As a result, consumers are less likely to exercise a great deal of care and more likely to be confused about the source of Defendants' Infringing Goods.

60.     In sum, there is a strong likelihood of confusion in this case.

61.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.


## COUNT THREE

## TRADE DRESS DILUTION

## (N.Y. GEN. BUS. LAW 360-L AND 15 U.S.C. § 1125(C)(2))

62.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

63.     Defendant's brazen use of the Plaintiff's Switch™ Brand trade dress also dilutes its value. Plaintiff's Switch™-Brand trade dress is famous and has been in widespread commercial use.

64.     With its virtually identical trade dress and poor quality, Defendant's Infringing Goods both blur and tarnish the exclusive association that consumers have with products and services of Plaintiff, thus diluting Plaintiff's Switch™-Brand trade dress.

65.     The Lanham Act provides a non-exhaustive list of factors to be considered in determining whether use of a mark is likely to cause dilution by blurring, including: "(i) [t]he degree of similarity between the mark or trade name and the famous mark[;] (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark[;] (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark[;] (iv) [t]he degree of recognition of the famous mark[;] (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark[;] and (vi) [a]ny actual association between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B).

66.     For New York state law, blurring the mark's fame need not be shown, but it must also be shown that the mark is distinctive and that the marks are substantially similar. To establish dilution by tarnishment under the Lanham Act, a plaintiff must show the likelihood of "an association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

67.     New York's tarnishment doctrine does not require a famous mark, but instead is shown when a distinctive mark is linked to products of shoddy quality, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiffs unrelated goods.

68.     As stated herein and in the Affidavit of Stephen Gallagher, the Switch™ Brand Mark and Products have achieved a high level of fame within the young men's apparel market and are distinctive in design and style.

69.     Defendant's misuse, misappropriation and infringement on the Switch™-Brand Mark and Products has only served to highlight the panache and cache of the Switch™-Brand

Mark and Product in the young men's apparel marketplace. By producing cheaper merchandise disguised to masquerade as Switch™-Brand apparel, Defendant has diluted Plaintiff's trademark.

70. Accordingly, Plaintiff is entitled to monetary damages and injunctive relief to be determined by this Court.

## COUNT FOUR

## UNLAWFUL IMPORTATION OF GOODS BEARING INFRINGING MARKS
## (SECTION 42 OF THE LANHAM ACT, 15 U.S.C. § 1124)

71. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

72. Defendant's acts alleged herein constitute the importation of merchandise which bears copies or simulations of the federally registered Switch™ brand Mark, in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124.

73. Defendant's use of the Switch™ brand Mark was willful, intentional, and done with the knowledge that the marks are counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

74. Defendant's acts entitle Plaintiff to damages for all of the Defendants' profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

75. Plaintiff has no adequate remedy at law for the foregoing wrongful conduct. Plaintiff has been, and absent injunctive relief will continue to be, irreparably harmed by Defendant's actions.

## COUNT FIVE

## UNLAWFUL IMPORTATION OF GOODS

## BEARING REGISTERED UNITED STATES TRADEMARKS

## (SECTION 526(A) OF THE TARIFF ACT, 19 U.S.C. § 1526[A])

76.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

77.     Defendants' acts alleged herein constitute the importation of merchandise which bears the Switch™ brand Mark, in violation of Section 526(a) of the Tariff Act, 19 U.S.C. § 1526(a).

78.     Defendant's use of the Switch™ brand Mark was willful, intentional, and done with the knowledge that the mark is counterfeit marks, as defined in Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

79.     Defendants' acts entitle Plaintiff to damages for all of the Defendant's profits derived from their past unlawful conduct, trebled, to the full extent provided under Sections 35(a) and 35(b) of the Lanham Act, 15 U.S.C. §§ 1117(a)-(b), or in the alternative to statutory damages under Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c).

80.     Plaintiff has no adequate remedy at law for the foregoing wrongful conduct. Plaintiff has been, and absent injunctive relief will continue to be, irreparably harmed by the Defendant's actions.

## COUNT SIX

## UNLAWFUL DECEPTIVE ACTS AND PRACTICES

## (NEW YORK GENERAL BUSINESS LAW § 349)

81.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

82. Defendant, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in Plaintiff's Switch™ Mark, has manufactured, distributed, offered for sale and/or sold the Infringing Goods to the consuming public in direct competition with Plaintiff's sale of genuine merchandise and in violation of New York General Business Law § 349.

83. Defendant's use of copies or simulations of Plaintiff's Switch™ Mark trade dress is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Defendant's Infringing Goods, and is likely to deceive the public into believing the Infringing Goods being sold by Defendant originate from, are associated with, or are otherwise authorized by Plaintiff.

84. Defendant's deceptive acts and practices involve public sales activities of a recurring nature.

85. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT SEVEN

## MISAPPROPRIATION

86. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

87. Defendant has misappropriated Plaintiffs' labors, skills, expenditures and good will, as aforesaid.

88. Defendant has displayed substantial bad faith in doing so, as Defendant's principals were advised by Plaintiff's counsel that they were misappropriating and selling the Infringing Goods to Plaintiff's potential customers.

89. Nonetheless, Defendant has continued to sell Infringing Goods to at least one retailer, Forman Mills, in deliberate disregard for the warnings administered by Plaintiff's principals. Aside from Defendant's obvious misappropriation of Plaintiff's merchandise, Defendant has acted in bad faith by concealing its deceptive actions by failing to remove the Switch™ brand labels and identifying characteristics from the Infringing Goods prior to retail sale.

90. As a result of Defendant's misappropriation of Plaintiff's Switch™-brand Mark and Products, Plaintiff has sustained damages in an amount to be determined at the trial of this action, but in no eventless than One Million Dollars ($1,000,000.00).

## COUNT EIGHT

## TORTIOUS INTERFERENCE

91. Plaintiff repeats and realleges the allegations above as if fully set forth herein.

92. Plaintiff has had a long-standing business relationship with Forman Mills, among other retailers, for many years.

93. Defendant knew of Plaintiff's relationship with Forman Mills, and other retailers, and intentionally interfered with those relationships.

94. Defendant acted solely out of malice, or used dishonest, unfair, or improper means.

95. Defendant's interference caused injury to the relationship between Plaintiff and Forman Mills, and other retailers

96.     Plaintiff has enjoyed a steady relationship with retailers such as Forman Mills, which now has elected to purchase Plaintiff's Switch™-brand apparel from Defendant at a lower price instead of ordering the same product from Plaintiff.

97.     Defendant knew that retailers like Forman Mills favored Plaintiff's Switch™-brand styles, and interfered with the established business relationship Plaintiff had with Forman Mills. Defendant's conduct has been knowingly and brazenly malicious and illegal, and has damaged Plaintiff's relationship with Forma Mills.

98.     As a result of Defendant's tortious conduct, Plaintiff has sustained damages in an amount to be determined at the trial of this action, but in no eventless than One Million Dollars ($1,000,000.00).

## COUNT NINE

## UNJUST ENRICHMENT

99.     Plaintiff repeats and realleges the allegations above as if fully set forth herein.

100.     By co-opting and diluting the intellectual property interests rightfully belonging to Plaintiff, Defendant has been unjustly enriched at Plaintiff's expense in such a manner as shocks the conscience and offends all notions of fairness and equity.

101.     Defendant is accordingly liable to Plaintiff in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00).

102.     As a result of Defendant's tortious conduct, Plaintiff has sustained damages in an amount to be determined at the trial of this action, but in no event less than One Million Dollars ($1,000,000.00).

## COUNT TEN

## INJUNCTIVE RELIEF

103.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

104.    Plaintiff will likely eventually succeed on the merits of the claims set forth herein.

105.    Plaintiff will suffer irreparable harm if the relief is not granted.

106.    The equities balance in favor of Plaintiff as Plaintiff seeks only the protection of its intellectual property. Defendant will suffer no harm or prejudice in the event the order is granted as requested.

107.    Based on the foregoing, a preliminary and permanent injunction must be issued against the Defendant barring and prohibiting Defendant from using the Switch™ Mark or Products in any manner in commerce.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    That Defendant, its officers, agents, servants, employees, attorneys and all persons in active concert with them be permanently enjoined and restrained from:

(i)    using the Switch™ Mark or Products or any reproduction, counterfeit, copy or colorable imitation of the Switch™ Mark or Products in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of Plaintiff; and

(ii)    passing off, including or enabling others to sell or pass off any Infringing Goods as and for Switch™ Brand Products; and

(iii)    shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner apparel, outerwear, accessories or other

items falsely bearing the Switch™ Mark, or any reproduction, counterfeit, copy or colorable imitation of same; and

2.      That Defendant, within thirty (30) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff written reports under oath setting forth in detail the manner in which Defendants have complied with Paragraph 1 of this Prayer for Relief, *supra*.

3.      That Defendant account for and pay over to Plaintiff profits realized by Defendant by reason of Defendant's unlawful acts herein alleged and, that the amount of damages for infringement of Plaintiff's Marks be increased by a sum not exceeding three times the amount thereof as provided by law.

4.      In the alternative, that Plaintiff be awarded statutory damages of $1,000,000 for Switch™ Mark and Products counterfeited by Defendant per type of good sold.

5.      That Plaintiff be awarded an amount to be determined at trial on Plaintiff's common law claims, but in no event less than One Million Dollars ($10,000,000.00).

6.      That Plaintiff be awarded its costs and reasonable attorney's fees incurred in this action.

7.      That Plaintiff be awarded pre-judgment interest on its judgment.

8.      That Plaintiff have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act and New York General Business Law §349, *et seq*.

## JURY DEMAND

A trial by jury is demanded on all claims for relief so triable.


Dated: April 20, 2021                 Respectfully Submitted,

WOODS LONERGAN, PLLC
Attorneys for Plaintiff

By: _____
Lawrence R. Lonergan [LL-4744]
Woods, Lonergan & Read, PLLC
280 Madison Avenue, Suite 300
New York, NY 10016
(212) 684-2500
llonergan@wlesq.com